Fannie M. Burroughs, Petitioner v. Workmen's Compensation Appeal Board (Brookvale Manufacturing Co., Inc.), Respondents.

Argued February 28, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

460

*Peter M. Suwak,* for petitioner.

*David McCloskey,* with him *Ronald Ganassi, Will & Keisling,* for respondent, Brookvale Manufacturing Co., Inc.

OPINION BY JUDGE ROGERS, April 18, 1983:

Fannie Burroughs, a workmen's compensation claimant and the appellant in this case, began her employment with Brookvale Manufacturing Co., Inc. in 1976 as a hand presser of men's coats in which position she was paid an hourly wage. In March or April of 1977 her position was changed to that of steam shoulder press operator trainee and for this work she was paid on a piece rate basis. She suffered an injury to her left hand on June 7, 1977. After returning to work the petitioner was given work other than that of steam shoulder press operator. The petitioner therefore had worked for her employer for a total period of about ten months and as a steam shoulder press operator trainee for a period of less than thirteen weeks at the time of her injury.

The petitioner filed a claim petition which the referee properly treated as a petition to set aside the final receipt she had signed when she returned to work. After a hearing, the referee found that the claimant remained partially disabled and set aside the final receipt; but he suspended compensation because the petitioner's earnings following her return to work as he computed them were more than her pre-injury average earnings of $130.00 per week. The Workmen's Compensation Appeal Board affirmed and this appeal followed.

The claimant contends that her pre-injury wages were improperly computed and that if they had been computed properly they would have been shown to be more than her earnings when she returned to work. Her thesis is bold, imaginative and goes as follows: that although during her work as a steam shoulder press operator trainee she had been able to press 600 coats a day, she would, when experienced, be capable of pressing 1000 coats a day; that the earnings which she would have enjoyed as an experienced steam shoulder press operator trainee pressing 1000 coats a day would have been such that if they had been used as the basis of the referee's computation, they would have exceeded her post injury earnings. She should therefore have been found to be entitled to an award for her partial disability.

Section 309 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §582 provides as follows:

Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employee ascertained in accordance with rules and regulations of the Department as follows:

. . . .

(d) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury, or in case the employe receives wages, monthly or semi-monthly, by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive calendar months in the year immediately preceding the injury:

If the employe has been in the employ of employer less than thirteen calendar weeks (or three calendar months, if the employe receives wages monthly or semi-monthly) immediately preceding the injury, his average weekly wage shall be computed under the foregoing paragraph, taking ''total wages'' for such purpose to be the amount he would have earned had he been so employed by employer the full thirteen calendar weeks (or three calendar months) immediately preceding the injury and had worked, when work was available to other employes in a similar occupation, unless it be conclusively shown that by reason of exceptional causes such methods of computation does not ascertain fairly the ''total wages'' of employe so employed less than thirteen calendar weeks (or three calendar months);

The claimant focuses on the second paragraph of subsection (d), providing, as we see, that if the em-

ploye "has been in the employ of the employer less than thirteen calendar weeks," the wage should be computed by taking total wages he would have earned had he been employed thirteen calendar weeks and had worked when work was available. The petitioner contends that she is entitled to the computation allowed by the second paragraph because she had worked less than thirteen weeks as a steam shoulder press operator trainee and second, that the amount of her wages should be computed as though she were an experienced rather than trainee steam press operator, which former status she would have attained if she had not been injured. As to her first proposition, the statute simply does not say that the computation allowed by the second paragraph of subsection (d) may be pursued in cases where the employe has been engaged in a particular position of employment for less than thirteen calendar weeks; it simply says that the computation applies "if the employe has been in the employ of the employer" less than thirteen calendar weeks. There is no room or warrant for interpreting the statute as the petitioner suggests. She was in the employ of her employer for more than thirteen weeks and subsection (d) does not apply.

Nor is there anything in subsection (d) which suggests that the wages should be computed on the basis of the rate of pay of a postion to which claimant had not only not attained but indeed one to which she might never have attained. *See Kraft v. Herr's Island Packing Co.*, 7 Pa. Commonwealth Ct. 343, 298 A.2d 275 (1972). In *Frank Irey, Jr., Inc. v. Workmen's Compensation Appeal Board*, Pa. Commonwealth Ct. , , 448 A.2d 647, 650 (1982), we wrote of a similar contention concerning the phrase "had worked, when work was available to other employes in a similar occupation":

Irey says that the referee should have "develop[ed] the wages of a similarly employed employee during the relevant period of time to compute the claimant's correct average weekly wage." Irey seems to be contending that the phrase emphasized above required a computation based not on the claimant's wages but on the wages of others in similar occupations. This is not in our opinion what the statute means. The phrase in question simply describes the second of two assumptions to be employed in using the thirteen week period in the case of a worker employed less than thirteen weeks—to wit, that the employee had actually worked when work was available.

We also reject the petitioner's contention that the distinction, for purposes of computation, made in Section 309 between workers who have and those who have not worked for the employer for thirteen calendar weeks the equal protection of the laws. The rationality of Section 309 generally, and subsection (d) in particular, in the computation of lost wages is so apparent that it requires no exposition here. *See Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980).

The claimant's final argument—that we should construe the Act as she suggests in order to overcome the effects of inflation—is not, of course, one which should be addressed to the judiciary.

Order affirmed.

### Order

And Now, this 18th day of April, 1983, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.